Nathaniel K. Charny
H. Joseph Cronen
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RANDON MAZZIE,

                      Plaintiff,

  -against-

ADMAR SUPPLY CO., INC.,
TIMOTHY WELLS in his individual and
professional capacity, and LAURIE ALUND
in her individual and professional capacity,

                      Defendants.

COMPLAINT

Civil Action No. 1:22-cv-1181 (BKS/TWD)

JURY TRIAL DEMANDED

Plaintiff complains, upon knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

Nature of the Case

1.    Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, et seq.  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's disabilities and retaliated against for engaging in protected activity, resulting in Plaintiff's unlawful termination.

1

## Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12133 and 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 42 U.S.C. §§ 12117 and 2000e-5, as it is a judicial district in the state (New York) in which the unlawful employment practices are alleged to have been committed.

## Procedural Prerequisites

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC with respect to these charges of discrimination.

7. This Action is being commenced within ninety (90) days of receipt of said Notice.

## Parties

8. At all times material, Defendant Admar Supply Co., Inc. ("Admar") was a domestic business corporation operating in the State of New York.

9. At all times material, Defendant Admar was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111.

10. At all times material, Defendant Admar had 15 or more employees for each working day in each of 20 or more calendar weeks in 2019.

11. At all times material, Defendant Admar had 15 or more employees for each working day in each of 20 or more calendar weeks in 2020.

12. At all times material, Defendant Admar had 15 or more employees for each working day in each of 20 or more calendar weeks in 2021.

13. At all times material, Defendant Admar was Plaintiff's employer under the ADA.

14. At all times material, Defendant Admar was Plaintiff's employer under the NYSHRL.

15. At all times material, Defendant Timothy Wells was an employee of Defendant Admar, holding the position of "Branch Manager."

16. At all times material, Defendant Wells was Plaintiff's supervisor and had supervisory authority over Plaintiff.

17. At all times material, Defendant Wells had the power to hire Plaintiff.

18. At all times material, Defendant Wells had the power to fire Plaintiff.

19. At all times material, Defendant Wells had the power to demote Plaintiff.

20. At all times material, Defendant Wells had the power to promote Plaintiff.

21. At all times material, Defendant Wells had the power to directly affect the terms and conditions of Plaintiff's employment.

22. At all times material, Defendant Wells had the power to direct Plaintiff's daily work activities.

23. At all times material, Defendant Wells was Plaintiff's employer under the NYSHRL.

24. At all times material, Defendant Laurie Alund was an employee of Defendant Admar.

25. Defendant Admar, Defendant Wells, and Defendant Alund are collectively referred to as "Defendants."

<u>Plaintiff's Disability</u>

26. Plaintiff suffers from post-traumatic stress disorder (at times "PTSD"), anxiety, and depression.

27. Plaintiff's disabilities (post-traumatic stress disorder, anxiety, and depression) are each impairments that substantially limit one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including sleeping, regulating mood, regulating emotion, breathing, and regulating heartbeat.

28. Plaintiff's disabilities (post-traumatic stress disorder, anxiety, and depression) each constitute (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21). They each impede Plaintiff's ability to, <u>inter alia</u>, sleep, regulate his moods, regulate his emotions, regulate his heartbeat, and breathe.

29. Plaintiff was qualified for Plaintiff's position.

30. Plaintiff was capable of performing the core functions of the position.

31. Plaintiff was capable of performing the core functions of the position if afforded a reasonable accommodation.

<u>Material Facts</u>

32. On or about December 16, 2020, Plaintiff began working for Defendant Admar as a "Rental Coordinator."

33. Plaintiff worked for Defendant Admar out of its "Branch" located at 878 Old Albany Shaker Road, Latham, New York.

34. In or around December 2020, Plaintiff informed Defendant Wells that he suffered from PTSD, anxiety, and depression.

35. In or around December 2020, Plaintiff informed Defendant Alund that he suffered from PTSD, anxiety, and depression.

36. In or around early January 2021, Plaintiff was given the additional responsibilities of the Dispatch Operations Manager position in addition to continuing as a Rental Coordinator.

37. In other words, in or around January 2021, Plaintiff began working two jobs for Defendants.

38. Plaintiff was given very little training regarding either position.

39. At times, Plaintiff would request assistance with his new responsibilities from colleagues including Defendant Alund.

40. Starting in mid-to-late January 2021, Defendant Alund frequently responded to Plaintiff's requests for assistance with insults, further exacerbating Plaintiff's disabilities.

41. For example, Defendant Alund frequently called Plaintiff "stupid" or "idiotic."

42. Defendant Alund also frequently called Plaintiff a "crybaby."

43. Ms. Alund's attacks caused Plaintiff great stress and worsened his disabilities.

44. This increased stress manifested itself physically as, for example, chest pains, difficulty breathing, and insomnia.

45. Plaintiff repeatedly told Defendant Alund that the way she treated Plaintiff negatively affected his disabilities, but Defendant Alund refused to stop demeaning Plaintiff.

46. In or around early January 2021, Plaintiff told Defendant Alund that her discriminatory behavior was causing him extreme anxiety and asked her to treat him in a way that would not negatively impact his disabilities.

47. Defendant Alund responded that, in sum and substance, she was "showing [Plaintiff] the ropes" and "this is the way it's always been."

48. Plaintiff was distraught that Defendant Alund refused to stop causing Plaintiff extreme distress.

49. In or around early January 2021, Plaintiff asked Defendant Alund to only speak with Plaintiff about work-related matters to reduce the amount of times she would verbally abuse him.

50. On or about January 15, 2021, Plaintiff complained to Defendant Wells about the way Defendant Alund was treating him and explained that it negatively affected his disabilities.

51. In doing so, Plaintiff complained that he was experiencing a hostile work environment and requested that Defendants reasonably accommodate his disabilities by decreasing the stress to which Plaintiff was being subjected.

52. As part of this request for a reasonable accommodation, Plaintiff asked that he not be subjected to a hostile work environment by Defendant Alund on account of his disabilities.

53. On or about early February 2021, Plaintiff again complained to Defendant Wells regarding Defendant Alund's behavior, again informing Defendant Wells that it was worsening Plaintiff's anxiety and other disabilities.

54. Although Defendant Wells told Plaintiff that he would speak to Defendant Alund about her conduct, upon information and belief, Defendant Wells never did so.

55. On or about March 9, 2021, Plaintiff again met with Defendant Wells to discuss Defendant Alund's discriminatory and abusive behavior.

56. Plaintiff complained that Defendant Alund repeatedly called him, for example, stupid or idiotic.

57. Plaintiff again explained that this treatment was triggering his anxiety and other disabilities.

58. On or about March 11, 2021, Defendant Alund again publicly berated and belittled Plaintiff, insulting Plaintiff by yelling at Plaintiff and calling him "stupid."

59. His anxiety and other disabilities triggered, Plaintiff stepped away from his desk to collect himself.

60. Plaintiff then returned to his desk and heard Defendant Alund tell a coworker that, in sum and substance, she could not "wait until [Plaintiff] just quits."

61. Feeling defeated, extremely anxious, and furious, Plaintiff took a picture of his son from his desk and went to his car.

62. Plaintiff sent a text message to Defendant Wells advising Defendant Wells that Plaintiff was leaving work for the day because of his disabilities and Defendant Alund's discriminatory conduct.

63. Plaintiff then left for home, but had to interrupt his journey home because of an intense panic attack.

64. Later that day, Defendant Wells advised Plaintiff that he intended to discuss the matter with Defendant Alund and Plaintiff.

65. Defendant Wells also asked Plaintiff if Plaintiff was quitting.

66. Plaintiff responded that he was not resigning.

67. On or about the following day, Friday, March 12, 2021, Defendant Wells telephoned Plaintiff.

68. Defendant Wells informed Plaintiff that Plaintiff was no longer employed by Defendant Admar, claiming that Plaintiff had abandoned his position.

69. Plaintiff protested that he had not abandoned his job.

70. Defendant Wells in turn insisted that he was not terminating Plaintiff.

71. Plaintiff replied that he intended to return to work the following Monday, March 15, 2021.

72. Defendant Wells replied that Plaintiff would not be returning to work with Defendants, realleging that Plaintiff had abandoned his position.

73. On or about March 12, 2021, Defendants terminated Plaintiff.

74. Plaintiff did not resign from his position with Defendant Admar.

75. Plaintiff did not abandon his position with Defendant Admar.

76. Defendant Alund intentionally triggered Plaintiff's disabilities.

77. Upon information and belief, Defendant Alund intentionally triggered Plaintiff's disabilities in order to drive Plaintiff to resign from his position with Defendant Admar.

78. Defendants intentionally triggered the symptoms of Plaintiff's disability because Defendants did not want to continue to employee Plaintiff because of his disability.

79. Defendants were aware of Plaintiff's disability and intentionally triggered Plaintiff to become symptomatic.

80. Defendants knew or should have known of the discriminatory conduct and failed to take corrective measures within their control.

81. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory termination.

82. Defendants retaliated against Plaintiff because Plaintiff objected to Defendant Alund's discriminatory and unlawful conduct.

83. But for Defendant Alund's position at Defendant Admar, Defendant Alund would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged above.

84. But for Defendant Wells' position at Defendant Admar, Defendant Wells would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged above.

85. Defendants created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

86. The above are just some of the ways Defendants regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

87. Defendants treated Plaintiff this way solely due to Plaintiff's disabilities (post-traumatic stress disorder, anxiety, and depression).

88. Defendants acted intentionally and intended to harm Plaintiff.

89. Defendants unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

90. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

91. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

92. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

93. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

First Cause of Action
Discrimination Under the ADA
(Against Admar)

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95. The ADA, at 42 U.S.C. § 12112(a), provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

96. Defendant Admar violated the section cited as set forth.

Second Cause of Action
Failure to Provide a Reasonable Accommodation Under the ADA
(Against Admar)

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

98. The ADA, at 42 U.S.C. § 12112(b) is entitled "Construction." In relevant part, it provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . . .
>
> (5)
>
> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an

undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

99. Defendant Admar violated the section cited as set forth by subjecting Plaintiff to a hostile work environment.

100. Defendant Admar violated the section cited as set forth by subjecting Plaintiff to an adverse employment action and/or adverse employment actions.

101. Defendant Admar violated the section cited as set forth.

### Third Cause of Action
### Retaliation Under the ADA
(Against Admar)

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. The ADA, at 42 U.S.C. § 12203, provides:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

104. Defendant Admar violated the section cited as set forth.

Fourth Cause of Action
Discrimination Under the New York State Executive Law
(Against all Defendants)

105. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

107. Defendants violated the section cited as set forth.

108. Defendants violated the section cited as set forth by subjecting Plaintiff to a hostile work environment.

109. Defendants violated the section cited as set forth by subjecting Plaintiff to an adverse employment action and/or adverse employment actions.

Fifth Cause of Action
Discrimination Under the New York State Executive Law
(Against Individual Defendants)

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

111. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

112. Defendant Wells violated the section cited as set forth.

113. Defendant Alund violated the section cited as set forth.

Sixth Cause of Action
Failure to Provide a Reasonable Accommodation Under the New York State Executive Law
(Against All Defendants)

114. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

115. New York State Executive Law § 296(3)(a) provides that:

> It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

116. Defendants violated the section cited as set forth.

Seventh Cause of Action
Retaliation Under the New York State Executive Law
(Against all Defendants)

117. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

119. Defendants violated the section cited as set forth.

Jury Demand

120. Plaintiff requests a jury trial on all issues to be tried.

Request for Relief

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants:

A.  Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and NYSHRL in that Defendants discriminated against Plaintiff based on Plaintiff's disability and wrongfully terminated Plaintiff due to Plaintiff's disability and retaliated against Plaintiff for objecting to discrimination and engaging in protected activity;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated:  Rhinebeck, New York
        November 10, 2022

_____
Nathaniel K. Charny
H. Joseph Cronen
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff